UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ORLANDO MCQUARTERS, | Case No. 22-cv-03679-TSH |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART: MOTIONS TO DISMISS** |
| GIOVANNA BORGNA, et al., | |
| Defendants. | Re: Dkt. Nos. 48, 61 |

## I. INTRODUCTION

Pending before the Court are two Motions to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), one filed by Defendant Alexander Molina (ECF No. 48), and one filed by Defendants City of Oakland and James Yamashita (ECF No. 61). Plaintiff filed an Opposition to each Motion (ECF Nos. 52, 65) and Defendants filed Replies (ECF Nos. 53, 66). The Court finds this matter suitable for disposition without oral argument and **VACATES** the July 20, 2023 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** the motions.[1]

## II. BACKGROUND

**A.  Factual Background**

Plaintiff Orlando McQuarters is a resident of Oakland. ECF No. 24 ¶ 1. Defendants Borgna, Lamphiear, Yamashita, and Molina are Oakland Police Officers employed by the City of Oakland ("the City") at the time of the incident. *Id.* ¶¶ 3-6.

On December 26, 2019, at 3:30 p.m. McQuarters was sitting across the street from the

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 49.

1  West Oakland Health Center. *Id.* ¶ 11. Officers Borgna and Lamphiear drove alongside

2  McQuarters, deciding if he fit the description of man who had a warrant for his arrest. *Id.* ¶ 12.

3  Plaintiff got on his bike, at which point Officer Lamphiear got out of the vehicle and began

4  chasing after McQuarters on foot. *Id.* ¶ 13. Officer Borgna pursued McQuarters in the police

5  vehicle. *Id.*

6  Officer Borgna caught up to McQuarters and intentionally steered her vehicle toward him

7  to close off his path, channeling McQuarters in the direction of parked cars. *Id.* ¶ 14. Borgna's

8  vehicle collided with McQuarters, causing him to ride his bike into a parked car and for his body

9  to flip over the bicycle handlebars, severely injuring his back. *Id.* ¶ 15.

10  Officer Borgna searched McQuarters' pocket and obtained McQuarters' wallet containing

11  his California identification. *Id.* ¶ 18. Officer Lamphiear took the wallet and immediately

12  observed McQuarters did not possess the name, date of birth, height, weight, or address of the man

13  who was wanted for arrest. *Id.* The officers still placed the handcuffed McQuarters in the back of

14  Officer Borgna's police vehicle. *Id.*

15  McQuarters remained handcuffed in the back of the police vehicle for approximately 20

16  minutes. *Id.* ¶ 19. While McQuarters was inside the vehicle, Defendants Officers Yamashita and

17  Molina observed McQuarters' identification and that McQuarters did not possess the name, date

18  of birth, height, weight, or address of the man wanted for arrest. *Id.* ¶¶ 20, 21.

19  After approximately 20 minutes, Defendants realized they made a mistake, removed

20  McQuarters' handcuffs, and released him. *Id.* ¶¶ 19, 23. McQuarters was then transported to

21  Highland Hospital for his injuries. *Id.* ¶ 23.

22  The City of Oakland Community Police Review Agency investigated McQuarters'

23  allegations of excessive force, and a recommendation was made to the City to create a policy

24  outlining when police officers can use their police vehicle to "channel" or alter the path of subjects

25  on bicycles. *Id.* ¶¶ 25-26. A recommendation was also made to create a policy that designates

26  "channeling" as a use of force any time the bicyclist is injured or the bicycle makes contact with

27  any other object. *Id.* ¶ 26.

28

**B.     Procedural Background**

On June 22, 2022 Plaintiff filed the instant action against Giovanna Borgna and Does 1-25. ECF No. 1.  On December 11, 2022, Plaintiff filed a Motion for Leave to File a First Amended Complaint, which the Court granted on December 29, 2022.  ECF Nos. 19, 24.  Plaintiff's First Amended Complaint ("FAC") alleges the following: 1) Violation of Plaintiff's Fourth Amendment Rights (against Defendant Borgna); 2) False Arrest (against Defendants Borgna, Lamphier, Yamashita, and Molina); and 3) *Monell*[2] Claim (against City of Oakland).  ECF No. 24.

On January 12, 2023, Defendants City of Oakland and James Yamashita filed a Motion to Dismiss the FAC.  ECF No. 25.  On January 20, 2023, the case was reassigned from the undersigned to Judge Chhabria.  ECF No. 30.  Defendant Alexander Molina filed a Motion to Dismiss the FAC on April 28, 2023.  ECF No. 48.  On May 8, 2023, Plaintiff filed an Opposition to Molina's Motion and an Amendment to the Opposition.  ECF Nos. 51, 52.  Molina filed a Reply on May 11, 2023.  ECF No. 53.  On May 26, 2023, the case was reassigned again for all further proceedings to May 26, 2023.  ECF No. 56.  The undersigned issued an Order to Show Cause on June 13, 2023 for Plaintiff to show cause why his claims should not be dismissed after Plaintiff failed to file an opposition to Defendants City of Oakland and Yamashita's Motion to Dismiss.  ECF No. 58.  On June 13, 2023, Defendants City of Oakland and Yamashita filed a new Motion to Dismiss.  ECF No. 61.  The Court then directed the Clerk of Court to terminate Defendants' January 12, 2023 Motion to Dismiss, as Defendants had re-filed their Motion to Dismiss.  ECF No. 62.  On June 15, 2023 Plaintiff filed an Opposition to Defendants Yamashita and City of Oakland's Motion to Dismiss.  ECF No. 65.  Defendants Yamashita and City of Oakland filed a Reply.  ECF No. 66.

### III.     LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v.*

---

[2] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

3

*Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

**A.   Officers Yamashita and Molina's Motions to Dismiss[3]**

    **1.   Integral Participation**

Both Yamashita and Molina argue that the FAC fails to plausibly state a claim against

---

[3] The FAC allegations against Molina and Yamashita are identical. *Compare* ECF No. 24 ¶ 20 ("While the Plaintiff was inside the police vehicle handcuffed, Defendant Yamashita

4

them based on false arrest because there are no allegations that they integrally participated in the unconstitutional false arrest of McQuarters. ECF Nos. 48 at 5; 61 at 5. The FAC alleges that both Yamashita and Molina observed McQuarters' identification, and that it contained a different name, date of birth, height, weight, or address than that of the man wanted for arrest. *Id.*; ECF No. 24 ¶¶ 20-21. McQuarters argues that these allegations support a false arrest claim based on integral participation because Yamashita and Molina knew or had reason to know there was no probable cause to arrest or detain McQuarters, but they failed to advocate for his release. ECF Nos. 52 at 5; 65 at 5.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "[A]n official whose 'individual actions' do 'not themselves rise to the level of a constitutional violation' may be held liable under section 1983 only if the official is an 'integral participant' in the unlawful act." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022). "[A]n actor may be deemed . . . to be an integral participant in the [constitutional] violation, only if (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Id.* at 891.

This Court finds that McQuarters has not alleged conduct by Molina or Yamashita to constitute "integral participation" in his alleged unlawful arrest under either *Peck* prong. As to the first category of participation, there are no allegations supporting a "common plan" to unlawfully arrest McQuarters. *Compare Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004) ("[E]very

---

observed the Plaintiff's I.D. and observed that the Plaintiff did not possess the same name, date of birth, height, weight or address of the man who was wanted for arrest."), *with id.* ¶ 21 ("While the Plaintiff was inside the police vehicle handcuffed, Defendant Molina observed the Plaintiff's I.D. and observed that the Plaintiff did not possess the same name, date of birth, height, weight or address of the man who was wanted for arrest."). The parties' respective arguments in favor of, and against, dismissal of the false arrest claims against Molina and Yamashita are also the same. *See* ECF Nos. 48, 52, 53, 61, 65, 66. The Court thus addresses them together.

5

officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed."); *see also Peck*, 51 F.4th at 889 (noting this "category of liability is fairly narrow."). Nor can it be plausibly said under the second category of cases that either Defendant "set in motion a series of acts" causing others to falsely arrest McQuarters. *Compare Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (finding officer who helped handcuff the prone plaintiff integrally participated where handcuffing was instrumental in gaining control of plaintiff and engaging in excessive force). Without pleading facts comporting with one of the *Peck* prongs, Plaintiff cannot maintain a false arrest cause of action against Yamashita or Molina based on a theory of integral participation.

Accordingly, to the extent Plaintiff alleges a false arrest claim against Defendant Yamashita based on an integral participation theory, the Court **GRANTS** Yamashita's Motion to Dismiss. To the extent Plaintiff alleges a false arrest claim against Defendant Molina based on an integral participation theory, the Court **GRANTS** Molina's Motion to Dismiss.

### 2. Duty to Intercede

As an alternative to integral participation, McQuarters argues that he states a cause of action against Yamashita and Molina for false arrest because each had a duty to interfere with other Defendants' unconstitutional arrest of McQuarters once they observed Plaintiff's information did not match the man wanted for arrest. ECF Nos. 52 at 5-6; 65 at 5-6.

"[I]n general, one does not 'subject' someone to a deprivation of a constitutional right—or 'cause [someone] to be subjected' to such a deprivation—simply by watching others violate the Constitution. To be liable under section 1983, a defendant official 'must be more than a "mere bystander."'" *Peck*, 51 F.4th at 889 (quoting *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) (brackets omitted)). However, "[i]n some situations, the Constitution may impose on an officer a duty to intervene to prevent an ongoing constitutional violation." *Id.* "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *U.S. v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *aff'd in part, rev'd in part,* 518 U.S. 81 (1996). "If an officer fails to intercede, 'the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who'

6

1    performed the offending action." *Tobias v. Arteaga*, 996 F.3d 571, 584 (9th Cir. 2021) (quoting

2    *Koon*, 34 F.3d at 1447 n.25). "[O]fficers can be held liable for failing to intercede only if they had

3    an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), *as*

4    *amended* (Oct. 31, 2000).

5          Molina and Yamashita argue that the FAC does not plead a theory of liability based on a

6    duty to intercede and McQuarters may not do so for the first time in an opposition. ECF Nos. 53

7    at 4-5; 65 at 5-6. "Rule 8's liberal notice pleading standard . . . requires that the allegations in the

8    complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon

9    which it rests.'" *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting

10   *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002)). "A party need not plead specific legal

11   theories in the complaint, so long as the other side receives notice as to what is at issue in the

12   case." *Pac. Coast Fed'n of Fishermen's Associations v. Glaser*, 945 F.3d 1076, 1086 (9th Cir.

13   2019) (quoting *Am. Timber & Trading Co. v. First Nat'l Bank of Oregon*, 690 F.2d 781, 786 (9th

14   Cir. 1982)).

15         The Court finds that the FAC sufficiently puts Defendants Yamashita and Molina on notice

16   of their alleged conduct and of the cause of action against them. Defendants' own arguments in

17   favor of dismissal evidence that they are aware of Plaintiff's claims – that the Defendants saw

18   McQuarters' identification, knew he was not the person wanted for arrest, but did not act to stop

19   his arrest. ECF Nos. 48 at 5, 61 at 5-6. Defendants argue that they were not sufficiently aware of

20   the basis for Plaintiff's arrest. ECF Nos. 48 at 5, 61 at 5-6. While a defendant must have had

21   knowledge and an opportunity to intercede, the Court finds the FAC allegations, that Defendants

22   became aware of Plaintiff's personal information while he remained in handcuffs in the back of

23   the police car, sufficient at this stage to defeat dismissal. *See Adams v. Kraft*, No. 10-CV-00602-

24   LHK, 2011 WL 846065, at *10 (N.D. Cal. Mar. 8, 2011) ("Accepting Plaintiff's allegations as

25   true, Sipes, Stone, and Bockman all had the opportunity to intercede and stop Hauck and Kraft

26   from allegedly arresting Plaintiff without probable cause. Therefore, Plaintiff has stated a Fourth

27   Amendment unlawful arrest claim against Sipes, Stone, and Bockman."); *compare Ramirez v.*

28   *Butte-Silver Bow County*, 298 F.3d 1022, 1029-30 (9th Cir. 2002), *aff'd sub nom. Groh v.*

United States District Court
Northern District of California

1  *Ramirez*, 540 U.S. 551 (2004) (finding no failure to intercede where the officer had no reason to
2  know the search warrant was defective until after the search). The Court does not consider it
3  dispositive to Plaintiff's claims against Molina and Yamashita that they were not present when
4  McQuarters was initially placed in handcuffs and in the police vehicle. *See Nicholson v. City of*
5  *Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) ("A reasonable officer would know that
6  participation in an ongoing seizure after any probable cause had dissipated violates the Fourth
7  Amendment.").

8  Accordingly, the Court **DENIES** Defendant Molina's Motion to Dismiss Plaintiff's cause
9  of action against him for false arrest based on failure to intercede. The Court **DENIES** Defendant
10 Yamashita's Motion to Dismiss Plaintiff's cause of action against him for false arrest based on
11 failure to intercede.

12 **B.     The City of Oakland's Motion to Dismiss**

13 The City of Oakland moves to dismiss Plaintiff's *Monell* claim based on failure to train.
14 ECF No. 61 at 6-7. The City argues that Plaintiff fails to allege that a policy, custom, or training
15 was the in-fact and proximate cause of the Officer Borgna's driving decisions, or that the City
16 disregarded the known consequence of a failure to train officers to use police vehicles to
17 "channel" or alter the path of individuals on bicycles. ECF No. 61 at 6-7. McQuarters argues that
18 he has plausibly alleged a failure to train officers on use of patrol vehicles in this regard, that such
19 training is necessary because using a vehicle to alter the path of a bicyclist may endanger the
20 bicyclist or other citizens, and that the City acted with deliberate indifference in failing to train
21 officers or adopt policies to prevent the use of excessive force against McQuarters. ECF No. 65 at
22 6-7.

23 The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

24 > Every person who, under color of [state law] ... subjects, or causes to
25 > be subjected, any citizen of the United States ... to the deprivation of
>    any rights, privileges, or immunities secured by the Constitution ...
26 > shall be liable to the party injured in an action at law, suit in equity,
>    or other proper proceeding for redress.

27 42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides
28 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386,

8

393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A municipality may face 42 U.S.C. § 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691-92). However, the municipality may be held liable "only for '[its] own illegal acts.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). It cannot be held vicariously liable for its employees' actions. *Id.* (citations omitted).

To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). An official municipal policy may be either formal or informal. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced.").

In the Ninth Circuit, a municipality may be liable under section 1983 under three possible theories. *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). The first is where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Id.* (quoting *Monell*, 436 U.S. at 694). Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.* at 802 (quoting *City of Canton, Ohio v. Harris*, 489 U.S.

9

378, 390 (1989)). Third, a municipality may be liable under section 1983 if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802-03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted)).

McQuarters argues that he has stated a claim based on the City's failure to train its officers on how or when to use patrol vehicles to "channel" the path of subjects on bicycles. ECF No. 65 at 7. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. A plaintiff alleging a failure to train claim under *Monell* must show: (1) she was deprived of a constitutional right, (2) the municipality had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact, and (3) her constitutional injury would have been avoided had the municipality properly trained those officers. *See Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1148 (E.D. Cal. 2009) (citations and internal quotations omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Connick*, 563 U.S. at 61 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)).

The Court finds that FAC fails to plausibly state a *Monell* claim based on a failure to train amounting to deliberate indifference to the constitutional rights of individuals. "[T]o demonstrate that the municipality was on notice of a constitutionally significant gap in its training, it is 'ordinarily necessary' for a plaintiff to demonstrate a 'pattern of similar constitutional violations by untrained employees.'" *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016) (quoting *Connick*, 563 U.S. at 61). The FAC alleges that the City fails to train and supervise its officers regarding when, and under what circumstances, officers can use patrol vehicles to "channel" or alter the path of subject on bicycles. ECF No. 24 ¶ 50. However, the FAC does not include any allegations supporting that there is a pattern of police officers "channeling" individuals' bike paths in a manner constituting unconstitutional excessive force. *Compare Heard v. Jackson*, No. 21-CV-09472-JSC, 2022 WL 2356821, at *6 (N.D. Cal. June 30, 2022) (finding

10

plaintiff sufficiently alleged municipality was on notice of constitutional deficiencies and there was a pattern of unconstitutional violations based on prior court case in which municipality was found liable for similar unconstitutional conduct); *Hernandez v. Contra Costa Cty.*, No. 20-CV-01183-AGT, 2020 WL 3078119, at *2 (N.D. Cal. June 10, 2020) (holding that plaintiff's allegations that for over 10 years the county "has known that its deputies are assaulting unconscious individuals after using carotid holds on them" were sufficient for a *Monell* claim at the pleading stage even though plaintiff did not provide specific factual allegations about other incidents and what exactly happened). While the FAC alleges that policy recommendations regarding "channeling" were made after the incident involving Plaintiff, there is no suggestion of prior incidents to infer the City was on notice of similar unconstitutional conduct.

Allegations of a pattern are not always required for a failure-to-train claim, as "'in a narrow range of circumstances' a particular 'showing of "obviousness" can substitute for the pattern of violations ordinarily necessary to establish municipal culpability.'" *Kirkpatrick*, 843 F.3d at 794 (quoting *Connick*, 563 U.S. at 61). However, McQuarters does not plead facts suggesting that the failure to train regarding "channeling" is "patently obvious," particularly where it is unclear that "channeling" is a method commonly employed by Oakland police officers or that such a method will be required of officers. *Compare City of Canton, Ohio*, 489 U.S. at 390 n.10 ("[C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, . . . can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.") (citation omitted); *Williams v. Cty. of Alameda*, 26 F. Supp. 3d 925, 947-48 (N.D. Cal. 2014) (finding allegations that the County defendant had no policy nor training in place for officers to know when and how to make a warrantless entry into a residence, search a residence, seize, or arrest occupants, could plausibly be so obviously deficient to establish municipal liability without a pattern of violations). It is not clear from the FAC that channeling itself is a common practice such that "'a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to

handle recurring situations.'" *Sommers v. City of Santa Clara*, 516 F. Supp. 3d 967, 988 (N.D. Cal. 2021) (quoting *Zuegel v. Mountain View Police Dep't*, No. 17-CV-03249-BLF, 2020 WL 5076628, at *11 (N.D. Cal. Aug. 27, 2020)); *see Sanchez v. City of Atherton*, No. 22-CV-03106-JSW, 2023 WL 137475, at *8 (N.D. Cal. Jan. 9, 2023) ("Plaintiff appears to suggest that the protests were one such recurring situation that Defendants were not equipped to manage based on their failed training. This argument fails because Plaintiff does not sufficiently allege that the Oakland protests were a recurring situation."). As such, McQuarters has not plausibly alleged deliberate indifference and, in turn, a *Monell* claim based on a failure to train.

Accordingly, the Court **GRANTS** dismissal of the City of Oakland's Motion to Dismiss. The Court **GRANTS** Plaintiff leave to amend.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants Yamashita and Molina's Motions to Dismiss Plaintiff's false arrest claim against them to the extent Plaintiff is alleging integral participation. The Court **DENIES** Defendants Yamashita and Molina's Motions to Dismiss Plaintiff's false arrest claim against them to the extent Plaintiff is failure to intercede. The Court **GRANTS** Defendant City of Oakland's Motion to Dismiss Plaintiff's *Monell* claim against the City of Oakland. The Court **GRANTS** Plaintiff leave to amend all claims by August 17, 2023.

**IT IS SO ORDERED.**

Dated: July 18, 2023

THOMAS S. HIXSON
United States Magistrate Judge